UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TROY L. BRIDGES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-cv-01206-TWP-DML |
| ) | |
| CAROLYN W. COLVIN, Commissioner of ) | |
| the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Troy L. Bridges ("Mr. Bridges") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), and for Supplemental Security Income ("SSI") under Title XVI of the Act.[1] For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

**I.    BACKGROUND**

**A.    Procedural History**

On October 27, 2011, Mr. Bridges filed applications for DIB and SSI, alleging a disability onset date of March 1, 2009. His claims initially were denied on December 12, 2011, and again on reconsideration on January 23. 2012. Mr. Bridges filed a written request for a hearing on May 15, 2012. On February 4, 2013, a hearing was held before Administrative Law Judge Monica LaPolt (the "ALJ"). Mr. Bridges participated in the hearing and was represented by counsel. On

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

February 21, 2013, the ALJ denied Mr. Bridges's applications for DIB and SSI. On May 20, 2014, the Appeals Council denied Mr. Bridges's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. On July 21, 2014, Mr. Bridges filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B.     Factual Background**

At the time of his alleged disability onset date, Mr. Bridges was 36 years old, and he was 40 years old at the time of the ALJ's decision.  Mr. Bridges attained an education through the eleventh grade, at which point, he dropped out of school.  Prior to the alleged onset of his disability, Mr. Bridges has a long history of working temporary jobs from 1999 to 2007.  His last employment was working as a warehouse worker loading and unloading trucks and a driver.  Since 2009, Mr. Bridges has been financially supported by his aunt and grandmother.

Mr. Bridges suffers from obesity and degenerative disc disease of the lumbar spine, resulting in pain and problems in his lower back, lower spine, hips, and knees.  He also suffers from hypertension and diabetes.  Mr. Bridges does not have any mental, affective, or anxiety-related disorders (Filing No. 12-7 at 18).  Mr. Bridges takes prescribed medication to manage his pain and to control his hypertension.

Mr. Bridges began experiencing bilateral knee pain and chronic back pain, contending that the pain became debilitating in 2009, leading to an inability to keep a job.  This lack of consistent employment made it difficult for Mr. Bridges to afford medical help.  Being unable to pay for insurance and co-pays, Mr. Bridges explained at the administrative hearing that he did not seek medical treatment during the previous thirty years.

Dr. John Heflin, M.D. ("Dr. Heflin") performed a consultative medical examination of Mr. Bridges on November 2011. (Filing No. 12-7 at 2). Dr. Heflin observed that Mr. Bridges was 6'0" tall and weighed 300 pounds. Dr. Heflin noted that Mr. Bridges was a 39 year old male with knee pain, back pain, and hypertension (Filing No. 12-7 at 4). Mr. Bridges was neurologically intact with normal intellectual function, memory, and communication. Further, Mr. Bridges walked with a normal gait, was stable at station, and appeared comfortable in a seated position (Filing No. 12-7 at 2). Dr. Heflin observed Mr. Bridges's right knee revealed crepitus and medical joint line tenderness, but his left knee was normal and both knees demonstrated a normal range of motion (Filing No. 12-7 at 4). Mr. Bridges's back presented no spasms or tenderness and had normal extension, ending, and rotation.

Dr. Heflin opined that Mr. Bridges had a normal ability to sit, stand, and walk, and could be expected to engage in those activities for up to eight hours in a normal work day with regular breaks. Further, Mr. Bridges could lift up to fifty pounds and presented only a slight difficulty squatting due to his knee pain. Mr. Bridges presented no environmental, driving, visual, or communicative limitations (Filing No. 12-7 at 4).

Medical consultant, Mangala Hasanadka, M.D. ("Dr. Hasanadka"), provided a second medical opinion in December 2011. She reviewed Mr. Bridges's conditions and acknowledged his impairments regarding back pain, knee pain, obesity, and hypertension. Dr. Hasanadka concurred with the opinions of Dr. Heflin regarding Mr. Bridges's conditions and restrictions. Dr. Hasanadka further opined that Mr. Bridges retained the ability to perform a range of light work. He also was capable of walking up stairs and ramps occasionally, but never climbing ladders, scaffolds, or ropes. He also was able to stoop, kneel, squat, and crawl on occasion (Filing No. 12-7 at 20–27).

On December 9, 2011, Mr. Bridges underwent a psychiatric review performed by William A. Shipley, Ph.D. ("Dr. Shipley"). Dr. Shipley explained that Mr. Bridges presented no medically determinable mental impairment (Filing No. 12-7 at 6). He noted that Mr. Bridges displayed no difficulties maintaining concentration, persistence, or pace and had no restrictions on activities of daily living or social functioning. He noted that Mr. Bridges is capable of caring for himself as well as his elderly grandmother, understands written and spoken instruction, and handles stress and change well.

On May 7, 2012, Mr. Bridges was evaluated by a primary care physician for the first time in thirty years. Maria Robles, M.D. ("Dr. Robles") performed a physical examination of Mr. Bridges, addressing his knee and back pain as well as his obesity and hypertension. She ordered x-rays of Mr. Bridges's knees, which came back normal (Filing No. 12-7 at 36). Dr. Robles started Mr. Bridges on hypertension medication and encouraged him to use over the counter medications, such as aspirin, to manage pain. She ordered a treadmill stress test for Mr. Bridges, which also came back normal without evidence of abnormalities or risks of myocardium.

Finally, Dr. Robles ordered an MRI of Mr. Bridges's lumbar spine. The MRI showed a large L5-S1 disc protrusion from the right foramen to the left lateral recess with compression of multiple traversing nerve roots, causing severe central canal stenosis (Filing No. 12-7 at 37). The MRI also showed an L4-L5 central disc protrusion and prominent dorsal epidural fat that caused moderate central canal stenosis. *Id.* It also revealed increased dorsal epidural fat and congenitally narrowed spinal canal from L1-S1. *Id.*

Because the MRI confirmed degenerative changes to the spine, Mr. Bridges was given Tramadol for pain control and was referred to physical therapy. When he returned to his primary care clinic for a routine check-up on July 16, 2012, Mr. Bridges had failed to attend his initial

evaluation appointment for physical therapy and had still not seen a physical therapist. He still complained of pain and was prescribed a narcotic pain medication. He again was referred to physical therapy as well as to a neurosurgeon for evaluation (Filing No. 12-7 at 41).

On August 6, 2012, Mr. Bridges was evaluated by a neurosurgeon, Scott A. Shapiro, M.D. ("Dr. Shapiro"). Mr. Bridges acknowledged that his prescription pain medication was helping but that he still had not attended physical therapy (Filing No. 12-7 at 42). Dr. Shapiro conducted a physical examination of Mr. Bridges and observed his MRI results. Dr. Shapiro found that Mr. Bridges had decreased hip flexion strength, full strength in his lower extremities, and intact bilateral sensation. Dr. Shapiro noted Mr. Bridges's disc protrusions with stenosis and midline tenderness on the spine at approximately the L4-L5 level (Filing No. 12-7 at 43). Dr. Shapiro recommended physical therapy and a follow-up appointment in three months. *Id.*

On January 13, 2013, Dr. Robles completed a residual functional capacity questionnaire of Mr. Bridges (Filing No. 12-7 at 46–51). She noted that she had been treating Mr. Bridges for about a year. His diagnosis was severe central canal spinal stenosis, which caused reduced forward range of motion, pain, and muscle spasms. She opined that these impairments were reasonably consistent with Mr. Bridges's demonstrated symptoms and functional limitations. She opined that his pain would interfere with his attention and concentration for even simple work tasks, and Mr. Bridges's prescribed pain medication caused him to have mild drowsiness. Finally, Dr. Robles opined that Mr. Bridges's impairments would cause him to be absent from work more than four days per month. In response to the question regarding Mr. Bridges' functional limitations, Dr. Robles responded that she does not do theses assessment and another provider would have to offer this opinion (Filing No. 12-7 at 47-48).

At the administrative hearing on February 4, 2013, Mr. Bridges testified that he had not worked a full time job since 2009 due to pain in his back and his obesity. His lack of employment has led him to be supported by his elderly grandmother and aunt. He testified that he can sit for approximately thirty minutes and stand for thirty minutes at a time. Mr. Bridges testified he has difficulty walking due to numbness he experiences in his hip and leg, which has caused him to fall in the past. Mr. Bridges stated he was taking medication for his back pain (Filing No. 12-2 at 40–44).

As part of his daily activities, Mr. Bridges testified that he depends on a friend to help him perform many aspects of his daily routine. He relies on a friend to get dressed, cook meals, do house work and laundry, and grocery shop. The friend spends upwards of six hours a day at Mr. Bridges's home assisting him while he spends most of his day in bed to relieve back pain. Mr. Bridges testified that he has more bad days than good ones with about four or five days of the week being bad. However, he drives daily to visit with his grandmother at a nursing home. He also smokes marijuana with his "buddies," visits often with friends, and enjoys watching television and listening to music (Filing No. 12-2 at 45–53).

## II. DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB or SSI only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous

work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ first determined that Mr. Bridges met the insured status requirement of the Act through December 31, 2013. The ALJ then began the five-step analysis. At step one, the ALJ found that Mr. Bridges has not engaged in substantial gainful activity since March 1, 2009, the alleged onset date of disability. At step two, the ALJ found that Mr. Bridges has the following severe impairments: degenerative disc disease of the lumbar spine and obesity. The ALJ found that Mr. Bridges's diabetes and hypertension are not severe impairments because Mr. Bridges's hypertension was controlled with medication and his diabetes was only "borderline" and never was treated. At step three, the ALJ concluded that Mr. Bridges does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Mr. Bridges has an RFC to "perform sedentary work … except he needs to be able to alternate sitting and standing at the workstation, provided that he is not off task for more than five percent of the workday." (Filing No. 12-2 at 22.) Also, Mr. Bridges "can never climb ladders, ropes, or scaffolds, but he can occasionally climb ramps and stairs, as well as balance, stoop, kneel, crouch, and crawl. He can only occasionally use foot controls with his right lower extremity. He can never be exposed to unprotected heights, and he can only occasionally be exposed to slippery, uneven surfaces." *Id.*

At step four, the ALJ determined that Mr. Bridges is unable to perform his past relevant work as a store laborer because it required the performance of work-related activities precluded by Mr. Bridges's RFC. At step five, the ALJ found that, considering Mr. Bridges's age, education, work experience, and RFC, there exists a large number of jobs in the national economy that Mr. Bridges can perform. Because there are jobs in the national economy that Mr. Bridges can

perform, the ALJ found that Mr. Bridges was not disabled from March 1, 2009, through the date of her decision.

## IV.  DISCUSSION

In his request for judicial review, Mr. Bridges raises three issues, which he asserts require reversal. First, Mr. Bridges broadly argues that the ALJ's decision—that he is not disabled due to his chronic back pain, leg pain, and numbness—is not supported by substantial evidence. Next, Mr. Bridges argues that the ALJ's decision should be reversed because the ALJ did not summon a medical advisor when determining whether his impairments met or medically equaled any listed impairment. Finally, Mr. Bridges asserts that substantial evidence does not support the ALJ's determination that Mr. Bridges is not disabled because there are a significant number of jobs in the economy that he is able to perform.

**A.  The ALJ adequately supported her determination that Mr. Bridges's impairments did not constitute a disability under the Act.**

Mr. Bridges argues that the ALJ failed to adequately support her determination that his chronic back pain, leg pain, and numbness did not constitute a disability. Specifically, Mr. Bridges argues that the ALJ should not have discounted the opinion of Dr. Robles, his primary care physician, that Mr. Bridges's pain impairments would cause him to miss four or more days of work per month, thereby leaving him unable to sustain employment. Mr. Bridges argues that the ALJ improperly substituted her own "layperson" opinion in place of the expert, medical opinions of Mr. Bridges's treating and examining physicians. Additionally, Mr. Bridges argues that the ALJ violated Social Security Rulings when determining that his credibility was lacking because he did not seek medical treatment and was noncompliant with prescribed treatment.

The Court is not persuaded by Mr. Bridges's arguments. Upon review of the administrative record and the ALJ's decision, the Court notes the thoroughness and completeness of the ALJ's

decision. The ALJ noted the substantial evidence that supported each determination throughout her decision. She did not improperly depend upon her own "layperson" opinion in her findings. The ALJ explained the reasons for discounting Dr. Robles's conclusions, basing that decision on the record evidence and Dr. Robles's own inconsistencies. Further, the ALJ clearly explained the bases for her credibility determination, noting the many inconsistencies in Mr. Bridges's statements at the hearing and written statements in his November 2011 adult function report in addition to his efforts to seek treatment and noncompliance with treatment plans.

In her decision, the ALJ explained that Mr. Bridges had severe impairments but that despite those impairments he retained the capability to perform a limited range of sedentary work, and thus, he was not disabled. In rejecting Mr. Bridges's contentions, the ALJ did not rely on her own opinions. Instead, the ALJ considered all the evidence in the record, including the evaluations of state agency physicians, Dr. Heflin, the consultative examiner, as well as the medical opinions of Mr. Bridges's primary care physician, Dr. Robles. Because Mr. Bridges had not presented to any medical providers until he applied for DIB and SSI benefits, the medical record evidence was limited, leaving little for the ALJ to consider. Yet, the ALJ did consider all the evidence and based her decision on that evidence.

The ALJ stated that she relied on the findings of Dr. Heflin and the other state agency physicians, finding them persuasive. However, the ALJ gave their opinions limited weight because those physicians did not have the benefit of reviewing the later-performed MRI. The ALJ specifically explained why she gave very little weight to Dr. Robles's opinions. The Seventh Circuit has explained that "[w]hen treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision." *Dixon*, 270 F.3d at 1178. The ALJ found that there was no medical evidence in the record to

support the conclusions of Dr. Robles, and further, Dr. Robles failed to complete functional assessments of Mr. Bridges, thereby leaving Dr. Robles's functional capacity conclusions unsupported. A treating physician's opinion is entitled to controlling weight if it is well-supported by medical findings and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). This was not the case with Dr. Robles's opinions, and the ALJ adequately explained this.

While an ALJ "is not required to address every piece of evidence or testimony . . . [she] must provide some glimpse into her reasoning." *Dixon*, 270 F.3d at 1176. The ALJ noted that Dr. Robles's opinion was internally inconsistent, noting that Dr. Robles had only limited positive findings such as muscle spasm and tenderness, and further, that many symptoms or findings expected with extreme impairments were absent. Also, Dr. Robles's opinion of disability was inconsistent with the treatment notes, which only mentioned tenderness. While Dr. Robles opined that Mr. Bridges would miss four or more days of work a month, Dr. Robles did not present any findings on actual functional limitations that would cause these work related absences.

Mr. Bridges also asserts that the ALJ erred in discrediting his testimony on the basis that he did not seek medical treatment for many years and he was noncompliant with his treatment plans. He relies on Social Security Ruling ("SSR") 96-7p, which explains:

> However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 96-7p.

Mr. Bridges fails to explain how the ALJ did not "first consider[] any explanations that the individual may provide, or other information in the case record" when determining his credibility.

12

The failure to seek or pursue regular medical treatment and noncompliance with treatment plans may be considered as part of the credibility determination.  In assessing Mr. Bridges's credibility, the ALJ considered Mr. Bridges's failure to seek medical care and his noncompliance with prescribed treatment as only part of the credibility determination.  The ALJ also found that Mr. Bridges's statements throughout the hearing and the record evidence were inconsistent, leading to the determination that his allegations of disability were not credible.

The ALJ pointed to inconsistencies in Mr. Bridges's testimony at the hearing in contrast to his earlier statements to physicians and in his written adult function report about his ability to care for himself and his elderly grandmother, his marijuana habit, and his overall medical condition.  The ALJ explained there was no evidence to support the hearing testimony of Mr. Bridges regarding the severity of his impairments and his functional limitations (Filing No. 12-2 at 27).

The ALJ was thorough in her analysis at each step of the disability determination process.  The ALJ supported her determination with substantial evidence that Mr. Bridges's impairments did not rise to the level of disability under the Act.

**B.      The ALJ did not err by not summoning a medical advisor at the hearing.**

Mr. Bridges argues that the ALJ's failure to summon a medical advisor to testify about the medical equivalence between Mr. Bridges's impairments and the Listing of Impairments is reversible error.  However, the ALJ properly relied on the findings of Dr. Heflin and other state agency physicians and the MRI evidence when determining medical equivalence.

Mr. Bridges relies on the decision in *Barnett v. Barnhart*, 381 F.3d 664 (7th Cir. 2004) for his argument that the ALJ erred in not summoning a medical advisor.  Mr. Bridges seems to assert that *Barnett* requires that a medical advisor must be called to testify in all disability cases.  However, that position is not accurate; an ALJ is not always required to summon a medical advisor.

Where the medical evidence is sufficient to allow an ALJ to make an informed determination, it is not necessary to call a medical advisor to testify at the hearing. *Sellinger v. Astrue*, 2011 U.S. Dist. LEXIS 99904, at *24–27 (S.D. Ind. Sept. 6, 2011). The decision to seek the opinion of additional medical experts is discretionary. *See* 20 C.F.R. § 416.927(e)(2)(iii). In this case, the ALJ considered the opinions of Dr. Heflin and other state agency physicians when determining medical equivalence. Thus, the ALJ relied on substantial medical evidence in the record to make an informed determination. Therefore, this is not a basis for reversal of the ALJ's decision.

Mr. Bridges further argues that the opinions of the state agency physicians could not be reasonably relied on by the ALJ because the opinions predated subsequent medical developments and treatment. The subsequent treatments included Wishard Hospital treatments from May to August 2012. The state agency physicians also did not review the physical capacity assessment by Dr. Robles dated January 16, 2013. However, the ALJ is not restricted to consideration of only the most recent medical opinion. The ALJ is to consider all the medical record evidence when making the disability determination. In this case, the ALJ properly considered all the evidence.

C. **The ALJ adequately supported her determination that Mr. Bridges is not disabled because there are a significant number of jobs in the economy that he is able to perform.**

Mr. Bridges's final argument concerns the ALJ's step-five determination that Mr. Bridges is not disabled because there are a significant number of jobs in the economy that he is able to perform. Mr. Bridges argues that the ALJ failed to take into account his chronic, disabling pain and his limitations in standing, walking, and lifting in determining his RFC.

The ALJ relied on substantial evidence and took into consideration each of Mr. Bridges's impairments when determining his RFC. In determining Mr. Bridges's RFC, the ALJ considered the record as a whole. She took into account all symptoms to the extent that they could reasonably

14

be accepted as consistent with the objective medical evidence. She also looked to opinion evidence in accordance with 20 CFR 404.1527 and 416.927 as well as SSRs 96-2p, 96-5p, 96-6p and 06-3p (Filing No. 12-2 at 23).

When considering opinion evidence, the ALJ considered the statements from treating and examining physicians, as well as the opinions from state agency physicians, and weighed the evidence accordingly (Filing No. 12-2 at 25). The ALJ gave very little weight to the opinions of Mr. Bridges's primary care physician, Dr. Robles, because the opinions regarding functional capacity lacked any significant objective basis. Additionally, the ALJ considered the statements of Mr. Bridges. The ALJ found Mr. Bridges's testimony to be internally inconsistent as well as inconsistent with the objective medical evidence. At his hearing, Mr. Bridges testified that "a girl I used to date" would come by every day and assist him with even small tasks, such as putting on his pants and shoes. Mr. Bridges's earlier written statements asserted that he lived with and cared for his elderly grandmother and had no problem with caring for himself, cooking, washing, and cleaning as necessary. Based on all the evidence and the RFC determination, the ALJ posed various hypothetical questions to the vocational expert to appropriately address Mr. Bridges's impairments.

In making her decision that there are a substantial number of jobs in the economy that Mr. Bridges can perform at the sedentary level with specific limitations, the ALJ gave significant weight to the testimony of the vocational expert. Based on the opinion of the vocational expert, there were over 25,000 positions in the state of Indiana and nearly 1.5 million positions in the nation that could be performed by an individual who had Mr. Bridges's RFC. (Filing No 12-2 at 28.) The ALJ's RFC determination and the decision that Mr. Bridges is capable of some work are supported by substantial evidence.

## V.   CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. Mr. Bridges's appeal is **DISMISSED**.

**SO ORDERED.**

Date: 6/9/2015

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov